1
2
3
4
5
6
7

8 UNITED STATES DISTRICT COURT

9 SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| HAMED SHAHABZADA ) <br> ) <br> Plaintiff, ) <br> v. ) <br> ) <br> MICHAEL J. ASTRUE, Commissioner of ) <br> Social Security ) <br> ) <br> Defendants. ) <br> ) <br> ) <br> _____ ) | Civil No. 08-1090 JLS (NLS) <br><br> **REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT AND REMANDING TO COMMISSIONER FOR FURTHER VOCATIONAL TESTIMONY** <br><br> [Docket Nos. 12, 13.] |

**I.    INTRODUCTION**

Hamed Shahabzada ("Plaintiff") brings this action pursuant to the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration ("Defendant") denying his claim for disability insurance benefits. This case was referred for a report and recommendation on the parties' cross-motions for summary judgment. *See* 28 U.S.C. § 636(b)(1)(B). After careful consideration of the moving papers, the administrative record, and the applicable law, the Court **RECOMMENDS** that Plaintiff's motion for summary judgment be **GRANTED** and that Defendant's cross-motion for summary judgment be **DENIED.**

**II.    PROCEDURAL HISTORY**

Plaintiff applied for SSI benefits on September 11, 2002 [Administrative Record ("AR") at 87-107.] Plaintiff alleged he became unable to work as of June 1, 2002 due to "Depression, Panic Attacks,

Anxiety, thoughts". [AR 99.]   Plaintiff also protectively filed a Title XVI application for supplemental security income on September 11, 2002. [AR 15, 245].  The Social Security Administration ("Administration") determined Plaintiff was not disabled and denied him benefits.  The claims were denied initially on December 20, 2002, and upon reconsideration, on May 30, 2003. [AR 15, 28-31, 33-36, 255-259, 281-85.]  An Administrative Law Judge ("ALJ") conducted a hearing on February 3, 2004 where Plaintiff was represented by an attorney and testified with the help of a Farsi interpreter.  [AR 640-656.] On March 16, 2004, the ALJ issued a decision again denying benefits and finding that Plaintiff could perform his past relevant work as a janitor.  [AR 15, 48-587, 263-270.]

Plaintiff requested review of the ALJ's decision and on June 17, 2005, the Appeals Council vacated the hearing decision and ordered the ALJ to conduct a new hearing, and to consider, *inter alia,* updated medical records, further evaluation of  Plaintiff's mental impairments, and whether Plaintiff could do his past relevant work.  [AR 15, 67-72.]  The Appeals Council specifically directed the ALJ "[i]f warranted by the expanded record, obtain evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base." [AR 71.]  The Appeals Council also noted Plaintiff had filed subsequent claims for Title II and Title XVI benefits on July 20, 2004 and ordered that the claims be associated and a new decision issued on the associated claims.

A supplemental hearing was held on July 11, 2006.  [AR 662-685.]  Plaintiff was represented by the same attorney and again testified.  An impartial medical expert also testified at the hearing.  On July 16, 2006, the ALJ issued a decision finding that Plaintiff met the insured status requirements, had not engaged in substantial gainful activity, and has "the following severe impairments: psychotic disorder NOS versus schizoaffective disorder; major depression, recurrent; obsessive compulsive disorder; an anxiety disorder NOS; and possible alcohol abuse. [AR 18.]  The ALJ again denied benefits, finding that Plaintiff could perform his past relevant work as a home health care attendant, and in the alternative, could perform other available work.  [AR 22.]   The ALJ determined Plaintiff's

> ability to perform work at all exertional levels has been compromised by nonexertional limitations.  However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels.  A finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

[AR 22.]

On February 8, 2008, the Appeals Council denied Plaintiff's request for review, making the July 26, 2006 ALJ decision the final decision of the Commissioner.  [AR 6-8.]

**III.   ANALYSIS**

    **A.   Standard of Review**

The Social Security Act provides for judicial review of a final agency decision denying a claim for disability benefits.  42 U.S.C.A. § 405(g).  A reviewing court must affirm the denial of benefits if the agency's decision is supported by substantial evidence and applies the correct legal standards.  *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001).  If the evidence is susceptible to more than one reasonable interpretation, the agency's decision must be upheld.  *Batson*, 359 F.3d at 1193.  Further, when medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are the exclusive functions of the agency.  *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Where, as here, the Appeals Council denies a request for review, the ALJ's decision becomes the final agency decision reviewed by the court.  *See Batson*, 359 F.3d at 1193 n.1.

    **B.   The Five Step Sequential Evaluation**

To qualify for disability benefits under the Social Security Act, an applicant must show that he or she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months.  42 U.S.C.A. § 423(d).  The Social Security regulations establish a five-step sequential evaluation for determining whether an applicant is disabled under this standard.  20 C.F.R. § 404.1520(a); *Batson*, 359 F.3d at 1194.  First, the ALJ must determine whether the applicant is engaged in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).  If not, then the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of the regulations.  20 C.F.R. § 404.1520(a)(4)(ii).  If the applicant's impairment is severe, the ALJ must then determine whether the impairment meets or equals one of the "Listing of Impairments" contained in the Social Security regulations.  20 C.F.R. § 404.1520(a)(4)(iii).  If the applicant's impairment meets or equals a Listing, he or she must be found

disabled. *Id.* If the impairment does not meet or equal a Listing, the ALJ must then determine whether the applicant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the applicant can no longer perform past relevant work, the ALJ at step five of the evaluation must consider whether the applicant can perform any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003). Applicants not disqualified at step five are eligible for disability benefits. *Id.*

### C. Assertion of Error

In challenging the ALJ's denial of benefits, Plaintiff first asserts the ALJ erred by: 1) finding Plaintiff could return to work as a home care attendant; and 2) failing to call a vocational expert before deciding that Plaintiff could do other available work. Defendant concedes the ALJ erred in finding that Plaintiff could return to his past relevant work. (Cross Mtn at 3.) Defendant, however, argues the error was harmless because the ALJ's finding that Plaintiff could perform a significant number of jobs in the national economy was supported by substantial evidence. Defendant argues the ALJ correctly relied upon the Medical-Vocational Guidelines, 20 CFR Part 404, supbpart P, Appendix 2 ("The Grid"). Thus the sole issue presented is whether the ALJ properly relied upon the Grid or erred by failing to obtain the testimony of a vocational expert.

### D. The ALJ Erred By Failing to Take Vocational Expert Testimony

Plaintiff argues that the ALJ's determination that Plaintiff was not disabled because he could perform a significant number of jobs in the economy was not supported by substantial evidence. The initial burden is on the claimant to show that he is disabled. Once the claimant establishes an inability to perform his previous work, the burden shifts to the Defendant to show the claimant can do substantial work existing in the national economy. *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988), *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986). The Defendant can satisfy this burden either by using the Grid or taking the testimony of a vocational expert. *Burkhart*, 856 F.2d at 1340. "The Medical-Vocational Guidelines are a matrix system for handling claims that involve substantially uniform levels of impairment." *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The Grid is a set

of tables that categorize jobs by their physical -exertional requirements into "sedentary" "light" and "medium" work. Each table sets forth combinations of age, experience and education to determine whether a person is disabled based upon the number of jobs in the national economy for someone with those characteristics. *Id.* "In determining whether a claimant can do substantial gainful work, the ALJ may apply the Secretary's medical-vocational guidelines (the grids) in lieu of taking the testimony of a vocational expert only when the grids accurately and completely describe the claimant's abilities and limitations." *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985).

### 1. The ALJ Could Not and Did Not Rely Solely on the Grid

Plaintiff argues his non-exertional limitations render the Administration's reliance on the Grid inappropriate. *Tackett*, 180 F.3d at 1101-02. Defendant counters that the ALJ's reliance on the Grid was appropriate, arguing "because Plaintiff is unlimited exertionally, his non-exertional impairments do not 'significantly reduce' the available unskilled job database notwithstanding the non-exertional limitations the ALJ assessed, i.e., low-stress, non-public work." (Cross Mtn at 3.)

In arguing that *because* a claimant has no exertional limits, that claimant's non-exertional limits do not significantly reduce the available job database, Defendant essentially argues that reliance on the Grid is always appropriate for a claimant without exertional limitations. Defendant cites no support for the proposition that reliance on the Grids is always appropriate for claimants without exertional limits, and the Court's own research reveals that the law is to the contrary. In fact, it would be error for an ALJ to rely solely on the Grid for claimants with only non-exertional limitations. *Polny v. Bowen*, 864 F.2d 661 (9th Cir. 1988) (rejecting argument that reliance on the grids was appropriate for claimant with only mental limitations and requiring vocational expert testimony to determine jobs within claimant's abilities.)*; see also Cooper v. Sullivan*, 880 F.2d 1152, 1155 (9th Cir. 1989) ("where a claimant suffers solely from a nonexertional impairment, the grids do not resolve the disability question; other testimony is required.")(footnote and citation omitted.); *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115 (9th Cir. 2006); 20 C.F.R. §416.969a; 20 CFR Part 404, supbpart P, Appendix 2 §200.00(e)(1)("The rules do not direct factual conclusions of disabled or not disabled for individuals with solely nonexertional types of

impairments.")[1]

Thus, reliance solely on the Grid would be error, but the ALJ recognized that the Grid could not be used as a sole basis, and instead provided a "framework for decisionmaking." [AR 22, citing SSR 85-15.] The question then becomes whether the ALJ relied on substantial evidence in the record to determine that Plaintiff's nonexertional limitations did not significantly reduce the available unskilled jobs.

### 2. The Record Lacks Substantial Evidence as to Jobs Available to Plaintiff

The ALJ found that Plaintiff had "the following severe impairments: psychotic disorder NOS versus schizoaffective disorder; major depression, recurrent; obsessive compulsive disorder; an anxiety disorder NOS; and possible alcohol abuse. [AR 18.] The ALJ also found, Plaintiff's

> ability to perform work at all exertional levels has been compromised by nonexertional limitations. However, these limitations have little or no effect on the occupational base of unskilled work at all exertional levels. A finding of 'not disabled' is therefore appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines.

[AR 22.] The ALJ did not take any Vocational Expert testimony and did not reveal the basis for his conclusion that Plaintiff's severe mental impairments would not affect the range of jobs he could perform. Defendant points to nothing in the record that provides substantial evidence to support the ALJ's determination that Plaintiff's mental impairments did not affect the occupational base of unskilled work at all exertional levels.

Defendant argues that the ALJ's conclusion is amply supported by the vast number of unskilled jobs in the national economy that ordinarily involve dealing with objects rather than people. (Cross Mtn at 3-4, citing 20 C.F.R. Part 404, Subpt P, App. 2 §200.00(b) and SSR 85-15.) The number of jobs available to those without mental impairments, however, does not provide substantial evidence that Plaintiff could perform those jobs, given his mental impairments. *See Cardenas v. Astrue*, 2009 WL 3617757 (E.D. Wash. Oct 29, 2009) (remanding case for vocational expert testimony where ALJ lacked

---

[1] When there are only exertional limits the ALJ must use the Grids. Where there are only non-exertional limits the ALJ may not rely solely on the grids. Where there are both exertional and non-exertional limits, the ALJ must first determine if the claimant is disabled without reference to the non-exertional limits; if the claimant is disabled, the inquiry is over. If the claimant is not disabled, then the ALJ must consider if the non-exertional limits further restrict the Residual Functional Capacity (RFC). *Lounsburry v. Barnhart*, 468 F.3d 1111, 1115-16 (9th Cir. 2006).

support for finding mental disorders that limited a claimant's ability to interact appropriately with the public "would have little or no effect on the occupational base of unskilled light work.")[2]

### IV. CONCLUSION

Based on a review of the record and consideration of the briefs submitted, the Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED** and the matter be remanded to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g), to allow for testimony by a vocational expert[3] and Defendant's Cross Motion for Summary Judgment be **DENIED**.

The court submits this report and recommendation pursuant to 28 U.S.C. § 636(b)(1) to the United States District Judge assigned to this case.

**IT IS ORDERED** that no later than *January 15, 2010* any party to this action may file written objections with the Court and serve a copy on all parties.  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than *January 29, 2010*.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

**IT IS SO ORDERED.**

DATED: December 16, 2009

Hon. Nita L. Stormes
U.S. Magistrate Judge
United States District Court

---

[2] Cardenas involved both exertional and non-exertional limitations.

[3] Plaintiff requested to have the matter remanded for the payment of benefits.  The testimony of a vocational expert is necessary to determine whether Plaintiff is entitled to benefits.  Accordingly, the Court declines to recommend that the case be remanded for the payment of benefits.